## THE STATE *v.* PAWTUXET TURNPIKE CORPORATION.

The violations of its charter on the part of a corporation, which will work a forfeiture of its franchises, must be something more than accidental negligence, or excess of power, or mere mistake in the mode of exercising an acknowledged power; and, though a single act of willful misfeasance may be a ground of forfeiture, yet a specific act of nonfeasance, not contrary to particular requisitions of the charter, nor committed willfully, nor producing, nor tending to produce mischievious consequences to any one, will not be. .

A sale and conveyance by an incorporated turnpike company of a portion of its road to a municipal corporation, and neglect thereafter to repair that portion, is a willful, deliberate act violative of its plain duty, which warrants a judicial decree of forfeiture of its charter.

INFORMATION in the nature of a *quo warranto*. At the March term, 1863, of this court, the Attorney General, on behalf of the State, by a communication in proper form addressed to the court, alleged that the defendant corporation had usurped, during the year last past, and were still using by usurpation, certain liberties, privileges and franchises, against the State and upon the people thereof, to their great damage and prejudice, and prayed process, to compel said corporation to make answer to the State by what warrant they claimed to have, use and enjoy the said liberties, franchises and privileges.

The corporation, by its treasurer, made appearance and answer at the September term, 1863,—and at the March term, 1865, the several issues of fact (ascertained after replication by the State,—rejoinder by the defendant, and surrejoinder by the State) were submitted to a jury. The State alleged a violation of the company's charter, in many particulars, more or less important, and the finding of the jury, upon some of the issues submitted, was for the State. Among them were these :—

"We find that since April 25, 1825, annual meetings of said corporation were not holden in 1852, 1853, 1854 and 1855, and that during said years officers were not elected as required by the charter, and that one other annual meeting of said corporation since April 5, 1825, other than those above mentioned, was

State *v.* Pawtuxet Turnpike Corporation.

not holden according to the charter, and at the last named meeting officers were not elected as required by the charter."

"We find that in the years 1852, 1853, 1854 and 1855, annual meetings were not holden at the places required by the charter."

"We find that said corporation has kept a fair account of the tolls received for, and expenditures made on, the road, with one exception, to wit, from October 16, 1861, to April 14, 1862, when a fair account of the tolls received was not kept."

"We find that the corporation did, in 1855, make a conveyance of a part of the road to the town of Cranston, and have since ceased to keep that portion of said road in repair."

The charter of the corporation was granted in 1825, and the sections to which reference is made by the jury, the counsel and the court, are these:—

"Section 1. *Be it enacted by the General Assembly, and by the authority thereof it is enacted,* that James Rhodes, Elisha P. Smith, Peleg Rhodes, Daniel Rhodes, William Rhodes, Charles Dyer, Paris Dyer, Benjamin Dyer, Thomas C. Hoppin, and others, their associates, successors, and assigns, shall be and they hereby are created a corporation and body politic, by the name of the Pawtuxet Turnpike Corporation ; and by that name shall be and hereby are made able and capable in law, as a body corporate, to purchase, possess, have and enjoy, to themselves, their successors and assigns, lands not exceeding one hundred acres, tenements, rents, tolls and effects, of what kind or nature soever ; and the same to grant, sell and dispose of by deed or deeds at their will and pleasure ; to sue and be sued, plead and be impleaded, answer and be answered unto, defend and be defended against in all courts of record and before all judges and justices whatsoever, in all cases of whatever name and nature ; and ordain and establish, and put in execution such by-laws, ordinances and regulations as shall seem necessary and convenient for the government of said corporation ; the same not being contrary to the laws of this State or the United States ; and to have a common seal, and generally do and execute all

and singular the matters and things which to them may apper-
tain in establishing, making, securing, maintaining and keeping
in repair the road herein described, and collecting the toll here-
inafter mentioned.

"Sec. 2. *Be it further enacted,* that the road to be made and
maintained shall be three rods wide, and shall commence at a
point on the road leading from Providence to Pawtuxet, about
two miles north of the latter place, and running northerly and
continuing in the most convenient route towards the town of
Providence, between the two hospitals, until it enter the com-
pact part of said town at Eddy's Point."

&ast;　　&ast;　　&ast;　　&ast;　　&ast;　　&ast;　　&ast;　　&ast;　　&ast;　　&ast;

"Sec. 5. *Be it further enacted,* that there shall be a meeting of
said corporation at the State House in Providence, on the twen-
ty-second day of January, A. D. 1825, at 2 o'clock in the after-
noon, and an annual meeting at such place as shall, from time
to time, be agreed upon by said corporation, on the first Monday
of April, for the election of president, treasurer and secretary,
and for transacting any other business which may legally come
before them. And said officers, thus chosen, shall continue in
office until others are chosen in their stead; and the place of
the last annual meeting shall be the place of the next annual
meeting, until another place is appointed; that three stock-
holders, holding to the amount of twelve shares, shall at all
times be necessary to constitute a quorum; and that all ques-
tions shall be decided by a majority of votes, allowing one vote
to each share; and the several members of said corporation
may appear at any meeting thereof, or vote by proxy, legally
constituted; and in case a special meeting shall be requested
by any person or persons holding twelve shares in said corpora-
tion, the secretary is hereby authorized to notify the same by
an advertisement in one of the Providence newspapers, three
weeks successively, previous thereto; and all special meetings
shall be holden at the place where the last annual meeting was
holden; and that said meeting shall have power to transact any
business which the said corporation have power to transact."

&ast;　　&ast;　　&ast;　　&ast;　　&ast;　　&ast;　　&ast;　　&ast;　　&ast;　　&ast;

"Sec. 11. *Be it further enacted*, that whenever the said corporation shall have received, by the toll collected as aforesaid, the full amount of the cost of making and laying out said road, and of purchasing the land through which the same shall pass, and twelve per cent. per annum for the interest of all such costs, after deducting the incidental charges and expenses of keeping said road in repair, and of collecting the tolls herein stated, the said corporation shall be dissolved, and the road aforesaid vest in the State."

\* \* \* \* \* \* \* \* \* \*

"Sec. 13. *Be it further enacted*, that, for the purpose of ascertaining the amount of said toll, a fair account of the receipt thereof shall be kept by the company aforesaid, which, together with an account of the expenditures of said company, in collecting said toll, and in repairing said road, shall at all times be open to the inspection of any committee or committees that may be appointed by the General Assembly to inspect the same."

*Rogers, Attorney General*, asking, on the State's behalf, a judgment and decree of forfeiture of charter :—

I. The findings of the jury show a direct violation of sections 2, 5, 11 and 13 of defendant's charter. Schedule, Jan. Session, 1825, p. 27.

II. The duties assigned by an act of incorporation are conditions annexed to the grant of the franchises conferred, violations of which forfeit the franchises. Angell & Ames on Corporations, § 776, and cases cited; *People* v. *Kingston and Middletown Turnpike R. Co.* 23 Wend. 205, and cases cited ; *People* v. *Bristol and Rensellaerville Turnpike Co.* 23 Wend. 233, and cases cited ; Sir James Smith's case, 4 Mod. 53. The non-performance of a particular act required by the charter, whether for the benefit of an individual or the State, is, or may be, a cause of forfeiture, although not specially declared to be such by the charter itself. *Attorney General* v. *Petersburgh and Roanoke R. R. Co.* 6 Ired. 456. The ingredient of a bad or corrupt motive need not enter into the cause ; it is enough if the duty is neg-

lected, or designedly omitted. *People* v. *Kingston and Middletown Turnpike Co.* 23 Wend. 208.

III. Either of the violations found by the jury is sufficient to forfeit defendant's charter. Each is a willful abuse or improper neglect. 1. The language of the fifth section of the charter is imperative in regard to holding annual meetings. The word used is "*shall*," not "*may ;*" so in regard to the place of holding them. The State is directly interested in the strict observance of all the provisions of the defendant's charter, for, the better the management of the road, the sooner it will vest in the State, and the annual meetings were directed to be held, not alone for the election of officers, but also "for the transacting any other business, which may legally come before them." 2. The failure to keep a fair account of the toll received, for six months, viz. : from October 16, 1861 to April 14, 1862, as found by the jury, is a gross violation of the very essence of the charter,—of the most important condition contained in it. Corporate franchises were granted to the defendant for the purpose of constructing a turnpike road, and the franchises were to continue until the defendant, as appears by the eleventh section of the charter, had been amply repaid for all trouble and expense, together with an enormous interest on the money laid out. The thirteenth section provides for the manner of ascertaining when the defendant corporation should be dissolved, and the road vest in the State. The duty of keeping a fair account of the tolls received is imposed on the defendant, and if that duty is not faithfully performed, a hardship and a fraud is practiced on the State, for the time of dissolution of the corporation and the road's vesting in the State is postponed. 3. Section second of the defendant's charter enacts, where "the road to be kept and maintained," " shall commence," and where it shall run, and yet, the defendant has transferred a portion of its road to the town of Cranston, and since then has not kept and maintained it as required by the charter, whatever the town of Cranston may have done. This is a hardship in more ways than one. *State* v. *Rives,* 5 Ired. 309. The violations here severally referred to are willful abuses and improper neglects, such violations of the conditions

of the charter as must forfeit it, if insisted on by the State, and this suit is proof that the forfeiture, if cause there is, is insisted upon.

*B. N. Lapham, for defendant:* —

I.   A neglect to hold annual meetings and to elect officers in 1852, 1853, 1854 and 1855, is no cause for forfeiture of charter.   The charter provides that officers shall hold office until others are elected.   Charter, § 5 ; Angell and Ames on Corporations, § 773.   Nor does a neglect to hold annual meetings in 1852, 1853, 1854 and 1855, at proper times and places, forfeit charter.

II.   The sale of a part of the road to the town of Cranston does not work a forfeiture.   The sale of a small part—and we are to suppose it to be the smallest possible part, as the jury have not found how much was sold—to a town that keeps that part of the road in repair (and, in the absence of proof to the contrary, we are to take it for granted that the town does keep it in repair) does not defeat the objects of the corporation, nor is it a willful abuse of power, nor an act at all injurious to the State or to the public.   The charter gives authority to buy, hold and sell real estate.   See charter, § 1 ; Angell and Ames on Corporations, § 776 ; *People* v. *Bristol and Rensellaerville Turnpike Road,* 23 Wend. 222.

III.   The company has generally, as appears by the finding of the jury, complied with its act of incorporation.

IV.   In those respects in which it has not, the findings of the jury are so vague and uncertain that no judgment can safely be rendered on them against the Turnpike Co.

V.   Too much time has elapsed since the alleged causes of forfeiture occured.   Angell & Ames on Corporations, § 743.

BRAYTON, J.   This is a proceeding by information in the nature of a writ of *quo warranto,* filed by the Attorney General against this Corporation, to declare its charter forfeit.   The Attorney General has, by his replication, set forth the several causes of forfeiture, which have been traversed by the respondent, and the issues arising therein have been submitted to a jury, who have returned their verdict thereon.   Three of those issues have been

found against the corporation, and the question raised upon these is, if the facts alleged therein and found by the jury are sufficient to create a forfeiture of the charter. It is claimed by the Attorney General, that the finding, in each and every of them, not only warrants but requires a judgment of forfeiture; that they show a violation, on the part of the corporation, of the condition upon which the franchises were granted, and that all the duties imposed upon a corporation by its charter are conditions of the grant.

In Sir James Smith's case, 3 Mod. 53, the court say that a corporation is created upon a trust, and if that is broken it is forfeited. In the case of *City of London* v. *Vanacker*, Ld. Ray'd, 498, it was said, that all franchises are granted upon condition that they shall be duly executed according to the charter, and that a corporation cannot be allowed to take a grant and repudiate the conditions on which it is made, and a breach of the conditions is punished by withdrawing the grant. The same doctrine is announced in *People* v. *Kingston and Middletown Turnpike Co.* 23 Wend. 193, and it is added that it is a fundamental doctrine that they (corporations) shall perform the conditions and duties enjoined by the fundamental law of their creation, and a non-performance of the conditions is, *per se*, a misuser that will forfeit the grant at common law.

Nevertheless, it is not every failure to perform a duty imposed that will work a forfeiture. It must be something more than accidental negligence, something more than excess of power, something more than mere mistake in the mode of exercising an acknowledged power, and, though a single act of willful nonfeasance may be ground of forfeiture, a specific act of non-feasance not committed willfully, and not producing or tending to produce mischievous consequences to any one, and not being contrary to particular requisitions of the charter, will not be. See Angell and Ames on Corporations, § 774. *People* v. *Bristol and Renselaerville Turnpike Co.* 23 Wend. 222. A substantial performance of the conditions or duty is all that is required. *People* v. *Thompson*, 21 Wend. 235, 237, 254. Long continued neglect to repair a turnpike road was, in *State* v. *Royalston and Wood-*

stock Turnpike Co. 11 Ver. R. 431, held to be clearly cause of forfeiture.

Upon one of these issues, the jury have found that the corporation did not, in the years 1852, 1853, 1854 and 1855, hold annual meetings as prescribed in their charter, and did not elect officers in those years as the charter prescribed. This neglect is claimed to be cause of forfeiture. If it could be shown that this omission to hold meetings and elect officers had worked mischief to the public or to individuals; that it had a tendency so to do, or to prevent the proper performance of the duties of the corporation, or defeat the purposes of its creation, it might and would require a recall of the grant. But, by the provisions of this charter, it was contemplated that these annual meetings might be omitted; that officers might not be annually elected; and, to obviate any difficulty which might arise from such omission, it was provided that the officers once elected should hold their offices until others should be elected in their places. The capacity of the corporation for performing its duties is, in no degree, impaired. The officers hold over until a new election, and until a legal meeting shall be held; and there is no suggestion that the failure to elect, or to hold the meetings at the times and places prescribed, has produced any injurious consequences, or even inconvenience, to the public or to individuals, or that the affairs of the corporation would have been managed in any respect differently from what they have been. They seem to have been omitted as unnecessary for any useful purpose, rather than willfully, or from any motive to avoid any duty incumbent upon the corporation. Justice would hardly require, under such circumstances, a withdrawal of the grant.

The charter provides that the corporation shall keep a fair account of the tolls received, and that such account of tolls, together with an account of the expenditures in collecting them and in repairing the road, shall, at all times, be open to the inspection of any committee that may be appointed by the General Assembly to inspect the same.

Upon one of the issues submitted to the jury, they have found that the corporation did keep a fair account of these tolls and of

the expenditures made on the road, but with one exception, to wit: from October 16, 1861, to April 14, 1862, when a fair account was not kept.

This omission to keep a fair account is urged as cause of forfeiture.

The purpose of keeping these accounts is stated or clearly implied from the charter. It is provided therein, that whenever the corporation should have received from the tolls collected the full amount of the cost of making and laying out their road, of purchasing the land through which it passes, and twelve per cent. per annum for interest upon such cost, after deducting all incidental charges of keeping in repair and collecting tolls, the corporation should be dissolved, and the road vest in the State.

The accounts were to be kept, in order to ascertain when that amount of tolls should have been received upon which the corporation was to be dissolved and the road vest in the State. It was essential, therefore, that this account should be kept, and always open to inspection.

The jury have, upon another issue, found that these accounts have always been open to the inspection of any committee of the General Assembly. That the omission to keep the account, as an exceptional performance of its duty, was willful, is not found by the verdict. It may, perhaps, be implied from what is found, unexplained, and so would be cause of forfeiture. But, in point of fact, as it appeared at the trial of this issue that the failure to keep the account was against the will of the corporation, by a faithless servant, who neglected to keep an account of receipts of tolls, and neither rendered an account or paid over what he received, and that this was corrected by the corporation, when discovered, as far as could be, to declare a forfeiture for this cause would be a hard measure, and savor of injustice.

There is another ground upon which a forfeiture of this charter is claimed.

The jury have found by still another issue, that, in 1855, this corporation made a conveyance of a portion of their road to the

town of Cranston, and has, since that time, ceased to keep that portion of the road in repair.

The charter enacted, that the road, to be made and maintained by the corporation, should be three rods wide, running from its present southerly terminus towards Pawtuxet to Eddy's Point, in the city of Providence.

The construction of this road the entire length, and maintenance of the whole in a proper condition for public travel, was the object to be attained by the creation of this corporation. It furnished the consideration and motive for the grant of the franchise, to maintain a gate and to take the tolls prescribed in their act of incorporation. The tolls were given for this sole purpose, and the duty of maintaining this road in its entirety, in a state of repair both safe and convenient for the public, became, especially and necessarily, a condition of the grant.

The General Assembly had, prior to 1855, relieved this corporation from the maintenance of a portion of the road originally laid out, and permitted the receipt of the usual tolls for the residue. But the company, in 1855, assumed to relieve itself still further, by abandoning the repair and maintenance of a further portion of the road, and, the more effectually to relieve itself, made the sale. This act of selling and subsequent neglect to repair was not accidental. It was not through mistake. It is not a simple act of misfeasance, with no tendency to mischievous consequences; but it is a willful, deliberate act, putting it out of the power of the corporation to perform its duty in the future, and a continued purpose and plan to escape a plain duty, and to throw off the burden of furnishing the consideration for which the franchise was granted. And justice requires that this corporation should not be allowed to retain the grant, while it willfully neglects and repudiates the condition on which it was made; and for this cause the charter must be declared forfeit.